**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


**Stephanie Nagy**

      **v.**                         Civil No. 06-cv-365-PB
                                        Opinion No. 2007 DNH 143

**Det. Timothy Mone,**
**Det. Ryan Ford, and**
**Det. Brett Walker**


**MEMORANDUM AND ORDER**


Stephanie Nagy is the owner of a 2002 Ford Explorer that was searched by detectives Timothy Mone, Ryan Ford, and Brett Walker in connection with the May 2006 arrest of Nagy's fiancé, Cleveland Facey, for sale of narcotics.  Nagy brings this suit under 42 U.S.C. § 1983 for damage allegedly done to her car during the search.  The City of Dover, New Hampshire, was a co-defendant in this case until Nagy assented to its motion for summary judgment in October 2007.  The remaining defendants (Mone, Ford, and Walker) now seek summary judgment.  For reasons stated below, defendants' motion is granted.

# I.   BACKGROUND

Because this is a motion for summary judgment, I recite the facts in the light most favorable to Nagy, the non-moving party. See Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007).

At all times relevant to this inquiry, Nagy was the registered owner of a grey 2002 Ford Explorer with New Hampshire license plate number "JAH-B" (hereinafter "Ford Explorer").  On May 22, 2006, Nagy's fiancé, Cleveland Facey, drove the Ford Explorer to a parking lot in Dover, New Hampshire, where undercover police officers employed by the New Hampshire Attorney General's Drug Task Force (the "Task Force") observed Facey distributing drugs to Holly Kirkendoll, who in turn sold crack cocaine to a police informant.

Facey was known to detectives Ryan, Ford, and Walker because he had been the subject of several prior narcotics investigations.  Task Force officers, including Detective Mone, had observed Facey driving the Ford Explorer on prior occasions. In January and March of 2006, Mone and other officers executed search warrants on the Ford Explorer, finding crack cocaine during both searches.  In January 2006, officers found ten bags

of crack cocaine in the rear pouch of the passenger seat; in March 2006, officers found crack cocaine in the secret hidden compartment of a spray can located in the car.

Task Force officers stopped Facey following the May 22, 2006, exchange after a computer check confirmed that Facey's driving privileges had been revoked.  Facey was arrested and the Ford Explorer was towed to the Task Force lot.  The officers obtained a warrant to search the Ford Explorer.[1]  The warrant authorized the officers to search for cocaine as well as for documents and for any proceeds or profits of drug trafficking.

While executing the search warrant, defendants pried back the weather-stripping over the driver's seat, pulled back part of the roof fabric, removing a portion of the dashboard, and removed covers on the head rests.  Nagy also alleges that defendants cut open the vehicle's seats.  To support this allegation, Nagy has

---

[1] The search warrant contained an affidavit from Mone detailing the extensive contact that Task Force investigators had with both Facey and with the Ford Explorer beginning in January 2006.  The affidavit states that, on numerous occasions, Task Force officers and informants observed Facey driving the Ford Explorer to a parking lot in Dover where the drug transactions occurred.  At least one confidential informant reported purchasing drugs from Facey inside the Ford Explorer.  The affidavit also reported that the Task Force had searched Facey's residence on suspicion of drug trafficking in January 2006 and had received anonymous calls linking Facey to drug trafficking over the past six months.

submitted pictures of what appear to be sliced-open head rests and other damage.  Defendants contend that they never cut open the seats, head rests, or any other upholstery.  In addition, a K-9 unit assisted with the search.  While the K-9 showed odor response both outside and inside the Ford Explorer, it did not give a primary alert.

Nagy alleges that defendants caused $5,223.29 worth of damage to the car during the search.

## II.  **STANDARD OF REVIEW**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment must first identify the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion

must be granted." <u>Ayala-Gerena v. Bristol Myers-Squibb Co.</u>, 95
F.3d 86, 94 (1st Cir. 1996); <u>see</u> <u>Celotex</u>, 477 U.S. at 323.

### III.   ANALYSIS

Mone, Ryan, and Walker argue that summary judgment is
appropriate because there is no genuine issue of material fact as
to whether Nagy's Fourth Amendment rights were violated.   In the
alternative, defendants assert that they are immune from suit
under the doctrine of qualified immunity even if Nagy does
present a colorable Fourth Amendment claim.

When government officials assert the affirmative defense of
qualified immunity, I begin by examining whether the facts as
alleged demonstrate a constitutional violation.  If I determine
that there was no constitutional violation, I need not proceed
further because plaintiff's claim fails as a matter of law.  If
plaintiff does allege the deprivation of a constitutional right,
I examine the next two steps in the qualified immunity analysis,
asking whether the right was clearly established at the time of
the alleged constitutional violation, and "whether an objectively
reasonable official would have believed that the action taken
violated that clearly established constitutional right."

Jennings v. Jones, 499 F.3d 2, 10 (1st Cir. 2007); see also

Saucier v. Katz, 533 U.S. 194, 201–02 (2001).

**A.    Step One:  Was There a Constitutional Violation?**

In Counts III and IV of her amended complaint, Nagy alleges

generally that the officers deprived her of constitutional rights

in violation of 42 U.S.C. § 1983, without specifically

identifying which rights were violated.  Viewing the complaint

and her objection to defendants' motion for summary judgment

together, it appears that Nagy is alleging a violation of her

Fourth Amendment right to be free from unreasonable searches and

seizures.  Nagy argues that the defendants conducted an

unreasonable search of the Ford Explorer because the K-9 did not

give any "primary alerts" on the interior of the car indicating

that drugs remained inside.  Nagy also claims that the search was

unreasonable because defendants "effectively destroyed" the

interior of the Ford Explorer during the search.  Notably, Nagy

alleges a constitutional violation based solely on the manner in

which the search was carried out; she does not challenge the

search warrant or the fact that there was probable cause for the

search.[2]

Defendants contend that the search for drugs was reasonable in light of the events of May 22, 2006, and note that they were granted a search warrant to search for drugs, contraband, and any related documents.  Defendants argue that, in light of their prior experience with Facey, the Ford Explorer, and drug offenders generally, they had reason to believe that drugs could be located in hidden spaces that could only be searched by dismantling parts of the vehicle.  Defendants emphasize that they tried to avoid unnecessary damage to the car during the search by refraining from slitting open seats or head rests and by using a small camera scope to look into inside cavities.

The Fourth Amendment protects property as well as privacy. Soldal v. Cook County, 506 U.S. 56, 62 (1992).  It is well settled that officers must sometimes damage property when executing a search warrant, Dalia v. United States, 441 U.S. 238, 258 (1979), although excessive or unnecessary destruction may violate the Fourth Amendment.  United States v. Ramirez, 523 U.S.

---

[2] I note that, notwithstanding the fact that the K–9 did not give a primary alert inside the car, the police had ample probable cause to search the vehicle based on Mone's affidavit in support of the search warrant.  This probable cause did not dissipate simply because the dog failed to alert.

65, 71 (1998).  The First Circuit has not directly confronted this issue, but numerous other federal appellate courts have held that the standard is reasonableness:  if the destruction of property is not reasonably necessary to effectuate the search warrant, it may violate the Fourth Amendment.  See, e.g., United States v. Becker, 929 F.2d 442, 446 (9th Cir. 1991); Hill v. McIntyre, 884 F.2d 271, 278 (6th Cir. 1989); Tarpley v. Greene, 684 F.2d 1, 9 (D.C. Cir. 1982).

The question of whether the destruction of property was reasonably necessary turns on disputed facts because the extent of the destruction is disputed.  For example, Nagy alleges that the officers dismantled the interior and cut open the vehicle's seats, while defendants argue that they never cut any upholstery.  To support her allegations, Nagy presents photographs of what appears to be damage to the interior of a car.  Viewing the facts in the light most favorable to Nagy, and assuming that the photographs accurately and fairly depict damage done to the Ford Explorer by defendants, it is not clear that the destruction alleged was reasonably necessary to execute the search warrant. Therefore, for purposes of summary judgment and the qualified immunity analysis, Nagy has properly pleaded a claim that the

officers violated her Fourth Amendment rights.

**B.    Step Two:  Was the Constitutional Right Clearly Established?**

Having concluded that Nagy has adequately pleaded deprivation of a constitutional right, I now consider whether the constitutional right on which her claim is based was clearly established.

The right to be free from unreasonable searches and seizures has been established since the passage of the Bill of Rights. U.S. Const. Amend. IV.  Further, at the time of this incident in May 2006, it was well established that officers may not unreasonably damage property during the execution of an otherwise lawful search.  Thus, defendants are not entitled to qualified immunity at step two.

**C.    Step Three:  Would a Reasonable Officer Have Understood That His Conduct Violated Clearly Established Constitutional Rights?**

In considering whether an objectively reasonable official would have believed that the destructive action alleged by Nagy violated her Fourth Amendment right, I recognize that qualified immunity sweeps broadly, protecting reasonable but mistaken exercises of discretion.  See Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir. 1995).  Qualified immunity protects "all but

the plainly incompetent or those who knowingly violate the law."
Id. (quoting Hunter, 502 U.S. at 229).  The qualified immunity
doctrine reflects a policy determination that officers should be
free to act without constant fear of suit and recognizes "the
difficulty of determining whether particular searches or seizures
comport with the Fourth Amendment."  Jennings, 499 F.3d at 19;
see Hunter, 502 U.S. at 229.  For these reasons, qualified
immunity protects officers who reasonably, although mistakenly,
overstep the boundaries of the Fourth Amendment.  See Jennings,
499 F.3d at 19; Buchanan v. Maine, 469 F.3d 158, 169–170 (1st
Cir. 2006).

     In this case, an objectively reasonable official would not
have understood that defendants' conduct violated Nagy's clearly
established constitutional rights.  Defendants had a duly
executed search warrant, signed by a state court judge, to search
the Ford Explorer for drugs.  From this, they could reasonably
conclude that the search warrant entitled them to search wherever
drugs could be found in the car.  Further, it was reasonable for
the officers to conclude that drugs could be located in a
concealed part of the Ford Explorer in light of their general
experience as members of the Task Force and, particularly, in

light of their specific experience with this suspect and this car.  Just a few months earlier, crack cocaine had been found in the same Ford Explorer, concealed in a hidden compartment of a spray can.  Under these circumstances, a reasonable officer would not have understood that a destructive search of the vehicle was off-limits merely because a drug dog failed to respond during the search in a way that unequivocally suggested that drugs were being concealed within the vehicle.

Legal authority also supports the reasonableness of defendants' conduct.  In the historic case of Carroll v. United States, 267 U.S. 132, 153 (1925), the Supreme Court upheld a warrantless search in which officers found bootlegged alcohol hidden behind the upholstery of seat cushions.  More recent cases also indicate that defendants' actions were reasonable.  See, e.g., United States v. Flores-Montano, 541 U.S. 149, 155 (1994) (holding that government officials may remove and disassemble a vehicle's fuel tank during border searches despite lack of probable cause); United States v. Patrick, 3 F. Supp. 2d 95, 102 (D. Mass. 1998) (holding that:  "[I]t is beyond dispute that after observing a hand-to-hand drug transaction . . . the observing officers then had probable cause to search without a

warrant the blue sport utility vehicle, and to search any cavity in the vehicle that could contain drugs.").

## IV.   CONCLUSION

For the reasons stated above, defendants are entitled to qualified immunity.  Accordingly, defendants' motion for summary judgment (Doc. No. 22) is granted.  The Clerk is directed to enter judgment accordingly.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

November 28, 2007

cc:  Brian J.S. Cullen, Esq.
     Andrew Livernois, Esq.
     Laura Lombardi, Esq.